UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                                                    Chapter 11

Buckskin Realty Inc,                                         Case No. 1-13-40083-nhl


                            Debtor.
-----------------------------------------------------------X

## DECISION DENYING MOTIONS

APPEARANCES:

| | |
|---|---|
| Frederick Cains, Esq.<br>430 East 86th Street<br>New York, NY 10028<br>*Attorney for Debtor* | Rey Olsen<br>41-26 27th Street<br>Long Island City, NY 11101<br>*Pro Se* |
| Jonathan B. Bruno, Esq.<br>Deborah M. Zawadzki, Esq.<br>Kaufman Borgeest & Ryan LLP<br>120 Broadway, 14th Floor<br>New York, NY 10271<br>*Attorneys for Edward Kaplan* | Peter T. Shapiro, Esq.<br>Lewish Brisbois Bisgaard & Smith LLP<br>77 Water Street, Suite 2100<br>New York, NY 10005<br>*Attorneys for Young/Sommer LLC and Allyson M. Phillips* |

Barry G. Margolis, Esq.
Abrams Garfinkel Margolis Bergson, LLP
1430 Broadway, 17th Floor
New York, New York 10018
*Attorneys for Windmont Homeowners
Association, Inc., Ed Lieto, Eva Halpern,
and Cathy Hennessy*


**NANCY HERSHEY LORD**
**UNITED STATES BANKRUPTCY JUDGE**

1

On the afternoon of January 8, 2013, Buckskin Realty (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition"), which operated as a stay of actions against the Debtor, pursuant to 11 U.S.C. § 362(a). The Debtor and Rey Olsen, the Debtor's principal and a *pro se* creditor ("Olsen" and, together with the Debtor, the "Movants"), request that the Court deem the Petition retroactively filed, because they seek to void a foreclosure sale that occurred on the morning of the filing date. The Movants argue that excusable neglect and inaccessibility of the Clerk's Office, under Rules 60(b), 6(b), and 6(a)(3) of the Federal Rules of Civil Procedure (the "Rules") and Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), justify relief. The Court disagrees. For the reasons discussed below, to the extent that the relief requested is predicated on a retroactive change in the filing date, the Debtor and Olsen's 5motions are denied.[1]

## BACKGROUND

Prior to January 8, 2013, the Debtor's primary assets, two lots of unimproved land located in a gated community in Windham, New York (the "Property"), were the subject of a state court foreclosure action brought by the community homeowners association, Windmont Home Owners Association, Inc. (the "HOA"). The HOA obtained a judgment of foreclosure, and a referee was appointed to conduct a sale of the Property. Olsen, aware of the sale scheduled for January 8, 2013 at 10:00 a.m. at the Greene County Courthouse in Catskill, New York, asserts that he intended to arrive at the U.S. Bankruptcy Court for the Eastern District New York, 271 Cadman Plaza East, Brooklyn, New York (the "Courthouse") by 9:30 a.m. to file a

---

[1] The Movants also seek compensatory, punitive, exemplary, and treble damages, based upon alleged acts and omissions by the Windmont Home Owners Association, "Young & Sommers, P.C.," and multiple individual parties in the state court proceedings. Debtor Mot., ECF No. 54; Olsen Mot., ECF No. 59. These claims for relief are denied, because they must be brought by adversary proceeding, pursuant to Bankruptcy Rule 7001. This decision is not intended to preclude the Debtor from seeking other available relief, if any, under the Bankruptcy Code and Bankruptcy Rules.

bankruptcy petition on behalf of the Debtor and obtain the benefit of the automatic stay. Hr'g Tr. at 54:15–55:11, June 3, 2014; *see also* Margolis Decl. Exs. J, K, ECF Nos. 81-11, 81-12 (state court declined to sign Debtor's proposed order to show cause to stay the foreclosure).  But Olsen did not arrive in time to stop the sale.  The Office of the Clerk of the Court, U.S. Bankruptcy Court, Eastern District of New York (the "Clerk's Office") time-stamped the Petition "received" at 12:38 p.m. and entered the Petition on the Court's Case Management/Electronic Case Files ("ECF") docket at 12:46:06 p.m., more than two hours after the sale was conducted and the Property sold to the HOA. Pet., ECF No. 1.

Contemporaneously with the Petition, Olsen filed a letter directed to the Clerk of the Court expressing that he was unable to reach the Courthouse by his targeted filing time because he relied on incorrect directions retrieved from the Court's website. Letter, ECF No. 7.  The directions stated that, among many other subway routes, a person could reach the Courthouse by taking a Brooklyn-bound "N" train to the Court Street station.  Olsen purportedly left the Debtor's office in Long Island City, New York on the morning of January 8, 2013, and boarded an "N" train at Queensboro Plaza.  However, the "N" train did not stop at Court Street and Olsen rode all the way to Coney Island, the end of the "N" line, before realizing he had long since passed Cadman Plaza.  Olsen backtracked to downtown Brooklyn, first stopping at the FedEx branch on Court Street to compose the letter and print the directions from the Court's website, and before arriving at the Courthouse to file the Petition. Hr'g Tr. at 52:2–53:7, June 3, 2014, ECF No. 107.

The Movants seek *nunc pro tunc* relief.  They ask the Court to regard the Petition as having been filed earlier than 10:00 a.m. on January 8, 2013, thereby granting the Debtor the benefit of the automatic stay prior to the foreclosure sale.  Edward Kaplan, the state court

referee; Allyson M. Phillips, Esq. and Young/Sommer LLC, Attorneys to the HOA in the foreclosure action; and the HOA, Ed Lieto, Eva Halpern, and Cathy Hennessy, oppose the motions.

## JURISDICTION

This Court has jurisdiction over cases under title 11 pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. 11 U.S.C. § 301(a) provides that a case under title 11 is commenced when a petition is filed. Thus, this Court's jurisdiction began when the Petition was filed. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 52, as made applicable by Bankruptcy Rule 7052.

## ANALYSIS

1. Nunc Pro Tunc Relief

The doctrine of "[n]unc pro tunc, Latin for 'now for then,' refers to a court's inherent power to enter an order having retroactive effect." *Negron v. U.S.*, 394 Fed.Appx. 788, 791 (2d Cir. Oct. 1, 2010) (quoting *Black's Law Dictionary* 1100 (8th ed. 2004)). An extraordinary remedy, it may not "be used to revise history, but only to correct inaccurate records." *In re IFC Credit Corp.*, 663 F.3d 315, 317 (7th Cir. 2011). Thus, an order for *nunc pro tunc* relief "is granted only in extreme cases," and is meant to "correct the record, not to alter substantive rights." *Levin v. Bank of New York*, No. 09 CV 5900 (RPP), 2011 WL 812032, at *10 (S.D.N.Y. March 4, 2011).

Here, changing the filing time of the Debtor's Petition would unquestionably alter substantive rights. Absent *nunc pro tunc* relief, the foreclosure sale could not have violated the

automatic stay, because the automatic stay did not go into effect until the Petition was filed. On the instant facts, the prepetition foreclosure sale extinguished the Debtor's interest in the Property, such that it did not constitute property of the Debtor's bankruptcy estate, pursuant to 11 U.S.C. § 541(a), when the Petition was filed. The Movants seek to void the sale through *nunc pro tunc* relief. However, the Debtor may not alter substantive rights by retroactively availing itself of the automatic stay, nor can this Court grant *nunc pro tunc* relief to a point in time before the Petition was filed.[2] Thus, *nunc pro tunc* relief must be denied.

2. Excusable Neglect

The Movants argue, pursuant to Rules 60(b) and 6(b) and Bankruptcy Rule 9006, that the Court should consider the Petition as having been filed at an earlier time because an act of excusable neglect, Olsen's ride on the "N" train, caused the delay.[3]

Rule 60(b)(1), made applicable by Bankruptcy Rule 9024, enumerates "excusable neglect" as a basis to provide relief "from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b)(1). The requirement that the neglect "be 'excusable' acts as a limitation necessary to prevent abuse." *Cobos v. Adelphi Univ.*, 179 F.R.D. 381, 386 (E.D.N.Y. 1998). Thus, a party's "[i]gnorance or inadvertence alone is rarely a sufficient excuse." *In re DeMartino*, 484 B.R. 550,

---

[2] In *In re Giacoma*, No. 06-24662, 2007 WL 2916297 (Bankr. D. Utah Mar. 22, 2007), the Court denied the debtor's request that a statement be deemed timely filed *nunc pro tunc*. During oral argument, Olsen cited *Giacoma* for the proposition that a "[c]ourt has discretion under certain circumstances to alter the effect of local rules and find that a document was properly 'filed' . . . when it is evident that the [d]ebtor's counsel has exercised due diligence in ensuring that a document was transmitted and received by the [c]ourt." *Giacoma*, 20014 WL 2916297, at *2 n.4. However, *Giacoma* is distinguishable from the instant case on multiple grounds, including the fact that Mr. Giacoma sought *nunc pro tunc* relief to a point in time after the petition had been filed, and the Court had jurisdictional authority to act. *See also In re Sizemore*, 341 B.R. 658, 659 (Bankr. N.D. Ind. 2006).

[3] The Court accepts as true Olsen's account that the "N" train did not stop at Court Street on the morning of January 8, 2013. The New York City subway system experiences periodic service changes and disruptions. Furthermore, the Court notes that, according to the Metropolitan Transit Authority website, the "N" line does not currently service the station during regular business hours. After receiving Olsen's letter, the "N" train was removed from the directions to the Courthouse posted on its website.

557 (Bankr. E.D.N.Y. 2012) *aff'd*, No. 13 CV 990 (RJD), 2014 WL 1572580 (E.D.N.Y. Apr. 17, 2014).

Bankruptcy Rule 9006(b) provides an additional means for extending time on the grounds of excusable neglect:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bank. P. 9006(b)(1). The language of Bankruptcy Rule 9006 corresponds to Rule 6(b). *See* Fed. R. Civ. P. 6(b)(1) ("[W]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . if the party failed to act because of excusable neglect."). Furthermore, the same standard for "excusable neglect" applies under Rule 60(b)(1), Rule 6(b), and Bankruptcy Rule 9006(b)(1).[4] *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship.*, 507 U.S. 380, 389, 392–93 (1993).

To support their argument that excusable neglect may justify a delay in filing a bankruptcy petition, the Movants rely on cases under Rules 60(b)(1) and 6(b)(1), including *Brown v. Beard*, 371 Fed.Appx. 257, 261–63 (3rd Cir. March 22, 2010), and *Humbert v. O'Malley*, No. CIV. WDQ-11-0440, 2014 WL 1266673, at *6 (D. Md. Mar. 25, 2014). The Movants argue that the instant facts meet the excusable neglect standard, because among other reasons, the HOA would not be prejudiced if the Court granted the Debtor retroactive relief, the reason for the delay was outside of Olsen's control, and Olsen acted as quickly as possible.

---

[4] The Court in *Pioneer* provided factors for courts to consider in analyzing excusable neglect: "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Pioneer Inv. Serv. Co.*, 507 U.S. at 395.

Olsen rhetorically asks the Court: "What more could I have done?" Hr'g Tr. at 54:21–22, June 3, 2014, ECF No. 107.

The determinative question, however, is not what more could have been done, but in what situations can excusable neglect allow a court to grant retroactive relief. The Movants analogize to cases distinguishable from the instant facts. Specifically, *Brown* and *Humbert* involved late-filed briefs in commenced civil cases. Thus, the parties sought extensions under Rules 60(b)(1) and 6(b)(1) to a point in time when the case was pending, and the court had jurisdiction to act.[5]

The facts before the Court are more similar to those in *In re Sizemore*, 341 B.R. 658 (Bankr. N.D. Ind. 2006). Ms. Sizemore's attorney sought to have the bankruptcy case treated as if it was commenced as of an earlier date, because he experienced an unforeseen computer error when filing the petition. In denying the relief, the court stated:

> While Rule 60(b) of the Federal Rules of Civil Procedure allows the court to relieve a party from a final order or judgment as a result of such things as excusable neglect, and Rule 9006 of the Federal Rules of Bankruptcy Procedure authorizes belated extensions of time to do something where the failure to act within the time required is attributable to excusable neglect, *both of those rules assume the existence of a case within which they can operate. They do not begin to operate or govern behavior until after a case has been filed and even then they apply only to what may happen after that date. Their operation is not retroactive. They do not authorize the filing of a case on one day while pretending that it was filed on another. This is especially so where bankruptcy cases are concerned and so many rights are determined as of the date of the petition.*

---

[5] *In re Sands*, 328 B.R. 614 (Bankr. N.D.N.Y. 2005), a case cited during oral argument, is neither supportive of, nor relevant to, Olsen's contention that his letter, filed on the Court's docket with the Petition, justifies retroactive relief. While excusable neglect was not at issue in *Sands*, the court suggested, in *dicta*, that "[i]f debtor's counsel could not submit a petition because the CM/ECF system experienced technical difficulties, counsel could submit proof that the problems at the clerk's office prevented the filing of the petition." *Sands*, 328 B.R. at 619. However, the issue in *Sands* was whether the filing of a bankruptcy petition, which began before a foreclosure sale, but due to computer problems, was not completed until after the sale, would be deemed filed before the foreclosure sale. The court held that an electronic petition is considered filed only when "the Court's CM/ECF servicer receives the transmission." *Id.* at 619.

*Sizemore*, 341 B.R. at 659 (emphasis added). This Court is not aware of any contrary authority, and adopts the reasoning set forth in *Sizemore* to conclude that it does not have the judicial power to invent an earlier filing.[6]

Moreover, the Debtor's reliance on Rule 6(b) and Bankruptcy Rule 9006 is misplaced. These rules govern enlargements of time "when an act is required or allowed to be done at or within a specified period." Fed. R. Bankr. P. 9006. In contrast, a debtor who elects to file a voluntary petition for relief under the Bankruptcy Code need not do so by a certain hour or day. Accordingly, there is no deadline for this Court to extend.

Under the plain statutory language, it is axiomatic that the presence of a judgment, order, or proceeding is a prerequisite to relief under Rule 60(b); just as a mandatory deadline is a prerequisite to relief under Rule 6(b)(1) or Bankruptcy Rule 9006(b)(1). Thus, the excusable neglect standard is inapplicable to the instant case.

3. Inaccessibility of the Clerk's Office

Additionally, the Movants argue that the directions on the Court's website rendered the Clerk's Office inaccessible to the Debtor for the duration of Olsen's efforts to reach the Courthouse, and thus, the Court should deem the Petition as filed at an earlier time, under Rule 6(a)(3).

Rule 6(a)(3)(A) and the corresponding provision applicable to bankruptcy cases, Bankruptcy Rule 9006(a)(3)(A), apply if a "time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time . . . is stated in

---

[6] Furthermore, the Movants' reliance on the Court's equitable powers is misplaced. The Court's ability to grant equitable relief does not allow it to create new rights or undo prior events in the case. *See In re Bushnell*, 273 B.R. 359, 366 (Bankr. D. Vt. 2001) ("This Court will not use § 105 to modify the requirements of a clear rule or to re-write the history of this case, and cannot in good conscience exercise its equitable powers to authorize a nunc pro tunc extension of time to rescue an untimely and otherwise time-barred appeal.").

days or a longer unit of time." Fed. R. Civ. P. 6(a)(1); Fed. R. Bank. P. 9006(a)(1). Then, "[u]nless the court orders otherwise, if the clerk's office is inaccessible: on the last day for filing . . . then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(3)(A); Fed. R. Bank. P. 9006(3)(A). Rule 6(a)(3)(B) and the corresponding provision applicable to bankruptcy cases, Bankruptcy Rule 9006(a)(3)(B), apply if a "time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time . . . is stated in hours." Fed. R. Civ. P. 6(a)(2); Fed. R. Bank. P. 9006(a)(2). In that case, "if the clerk's office is inaccessible: during the last hour for filing . . . then the time for filing is extended to the same time on the first accessible day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(3)(B); Fed. R. Bank. P. 9006(3)(B).

As a threshold matter, the Court cannot accord the Debtor relief under Rule 6(a)(3) or Bankruptcy Rule 9006(a)(3) because, as discussed above, these provisions apply to the computation of time only after a case has been filed and a deadline imposed. *Sizemore*, 341 B.R. at 659. Nevertheless, even if the Court could reach the merits of the Movant's arguments, the Clerk's Office was not "inaccessible" on January 8, 2013.

Courts limit relief under Rule 6(a)(3) and Bankruptcy Rule 9006(a)(3) to situations in which the courthouse is physically inaccessible. *E.g. Hotel Syracuse, Inc. v. City of Syracuse Indus. Dev. Agency (In re Hotel Syracuse, Inc.)*, 154 B.R. 13, 18 (N.D.N.Y. 1993) (relief not available when clerk's office remained open and physically accessible to the general public, notwithstanding inclement weather); *In re Bicoastal Corp.*, 136 B.R. 288, 289 (Bankr. M.D. Fla. 1990) ("Bankruptcy Rule 9006(a) was intended to extend the time period only when weather or a natural disaster physically prevents access to the Clerk's Office and not when the selected

9

method of transmission of the filing fails to arrive at the Office of the Clerk for whatever reason."); *see also In re Ben-Baruch v. Island Props.*, 362 B.R. 565, 567 (E.D.N.Y. 2007) (excluding "a day in which the clerk's office is inaccessible due to weather or other conditions" from the computation of time periods in bankruptcy proceedings). Even if inclement weather causes delays, but the clerk's office is accessible later that day, courts will deny an extension based upon a theory of inaccessibility. *Barnett-Moore v. Federal Home Loan Mortg. Corp.*, No. 3:12-cv-250-RCJ-VPC, 2013 WL 315220, at *4 (D. Nev. Jan. 25, 2013).[7]

Moreover, case law suggests that the advent of ECF has further restricted the meaning of inaccessibility. *E.g. Miller v. City of Ithaca*, No. 3:10-cv-597, 2012 WL 1589249, at *3 (N.D.N.Y. May 4, 2012) ("With electronic filing, the Clerk's office was accessible for purposes of filing papers and Defendants could have filed their motion in a timely manner."); *In re Wholesale Grocery Prods. Antitrust Litig.*, No. 09-MD-2090 ADM AJB, 2011 WL 586413, at *1 (D. Minn. 2011) (clerk's office not inaccessible on a holiday deadline, because ECF was operational); *McDow v. Runkle (In re Runkle)*, 333 B.R. 734, 739 n.3 (Bankr. D. Md. 2005) ("Filing by ECF ends the concept of the clerk's office being inaccessible on weekends and legal holidays. Under ECF, the clerk's office is always open for the reception of filings.").

Here, the Clerk's Office was not inaccessible. It was open during normal business hours and no inclement weather or other physical situation prevented anyone from filing documents. Furthermore, the Movants do not allege a malfunction by the Court's ECF system.[8] Therefore,

---

[7] The Movants' reliance on *Barnett-Moore* is misplaced, as that case follows the prevailing rule that a clerk's office is not "inaccessible" if access is possible on the day in question. *Barnett-Moore*, 2013 WL 315220, at *4.

[8] A corporate debtor may not appear *pro se.* Thus, prior to January 8, 2013, the Debtor might have retained bankruptcy counsel with the ability to electronically file the Petition, thereby avoiding any potential delay due to accessibility of the Clerk's Office. Instead, Olsen, as the Debtor's principal, opted to hand-deliver the Petition and risk that unforeseen events could delay the filing until after the foreclosure sale took place.

Rule 6(a)(3)(A) and Bankruptcy Rule 9006(a)(3) do not authorize this Court to construe an earlier filing time.

## CONCLUSION

For all the reasons stated above, the Court denies the Movants' request to deem the Petition filed at an earlier time, and holds that the foreclosure sale did not violate the automatic stay, because it occurred prior to the filing of the Petition. A separate order will issue.



**Dated: January 6, 2015**
**Brooklyn, New York**

**Nancy Hershey Lord**
**United States Bankruptcy Judge**